UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MR. H., et al., | ) |
|     Plaintiffs | ) ) ) |
| v. | )   No. 2:14-cv-148-GZS ) |
| REGIONAL SCHOOL UNIT 21, | ) ) |
|     Defendant | ) |

*MEMORANDUM DECISION AND ORDER ON
CROSS-MOTIONS TO SUPPLEMENT THE RECORD*

The parties to this case arising under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.,* cross-move to supplement the record with evidence bearing on their efforts to create and implement a plan to transition plaintiff E.H. from a private program in Massachusetts to a day-treatment educational program in Maine. *See* Plaintiffs' Motion To Permit Presentation of Additional Evidence ("Plaintiffs' Motion") (ECF No. 16); Motion to Supplement the Record ("Defendant's Motion") (ECF No. 18). For the reasons that follow, I grant the cross-motions in part, to the extent that the proffered evidence bears on the timing of the addition of the transition plan to an October 16, 2013, individualized education plan ("IEP") offered to the family and the costs for which Mr. H. seeks reimbursement through that date, and otherwise deny them, agreeing with the defendant that the plaintiffs have failed to demonstrate that the balance of the proffered evidence is relevant.

## I. Procedural Background

In opposing the Plaintiffs' Motion, the defendant, Regional School Unit 21 ("District" or "RSU 21"), stated that it had filed its cross-motion in an abundance of caution and that it argued, as a threshold matter, that neither side's evidence should be admitted. *See* Defendant Regional

1

School Unit No. 21's Response to Plaintiff[s'] Motion to Permit Presentation of Additional Evidence ("Defendant's Opposition") (ECF No. 24) at 1-2 & n.3, 5-8. It contended that this was so because the proffered evidence pertained to matters with respect to which the plaintiffs had failed to exhaust their administrative remedies, depriving the court of subject matter jurisdiction to consider it and rendering it irrelevant. *See id.* In the alternative, the District objected in part to the admission of the plaintiffs' proposed evidence and pressed its bid for admission of its evidence. *See id.* at 8-11.

The plaintiffs protested that the District had raised the threshold issue for the first time in response to their cross-motion and, in any event, it lacked merit. *See* Plaintiffs' Reply Memorandum in Support of Their Motion To Permit Presentation of Additional Evidence ("Plaintiffs' Reply") (ECF No. 30) at 1-4. They also objected in part to the admission of the District's proposed evidence. *See generally* Plaintiffs' Partial Objection to Defendant's Motion To Supplement the Record ("Plaintiffs' Opposition") (ECF No. 26).

Given the importance of the threshold issue raised by the District, I granted its request for oral argument, *see* Defendant's Opposition at 6-7, which was held before me on November 21, 2014, *see* ECF No. 34. At the conclusion of that argument, I granted the District's request for supplemental briefing, which was completed on February 2, 2015. *See* Defendant Regional School Unit No. 21's Supplemental Brief on Parties' Motions to Supplement Record ("Defendant's Suppl. Brief") (ECF No. 35); Plaintiffs' Supplemental Memorandum of Law in Support of Their Motion To Permit Presentation of Additional Evidence ("Plaintiffs' Suppl. Opposition") (ECF No. 36); Defendant Regional School Unit No. 21's Reply to Plaintiffs' Supplemental Brief on Parties' Motion to Supplement Record ("Defendant's Suppl. Reply") (ECF No. 39). The District requests further oral argument, *see* Defendant's Suppl. Brief at 1; Defendant's Suppl. Reply at 1; however,

I deny that request on the basis that the oral argument that I have already heard and the supplemental briefs filed by the parties provide an adequate basis on which to rule.

## II. Applicable Legal Standards

The action is brought pursuant to 20 U.S.C. § 1415, which provides, in relevant part, that a party aggrieved by the decision of a hearing officer with respect to the free public education provided to a disabled child may bring an action in federal court in which the court "shall hear additional evidence at the request of a party[.]" 20 U.S.C. § 1415(i)(2)(C). The First Circuit has interpreted this statutory language to require a reviewing court to grant a party leave to present additional evidence only when that party presents "solid justification" for such supplementation of the record. *Roland M. v. Concord Sch. Comm.,* 910 F.2d 983, 996 (1st Cir. 1990). It has elaborated:

> As a means of assuring that the administrative process is accorded its due weight and that judicial review does not become a trial *de novo*, thereby rendering the administrative hearing nugatory, a party seeking to introduce additional evidence at the district court level must provide some solid justification for doing so. To determine whether this burden has been satisfied, judicial inquiry begins with the administrative record. A district court should weigh heavily the important concerns of not allowing a party to undercut the statutory role of administrative expertise, the unfairness involved in one party's reserving its best evidence for trial, the reason the witness did not testify at the administrative hearing, and the conservation of judicial resources.

*Id.* (citation and internal punctuation omitted).

The First Circuit has observed:

> The reasons for supplementation will vary; they might include gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing. The starting point for determining what additional evidence should be received, however, is the record of the administrative proceeding.

*Town of Burlington v. Department of Educ.*, 736 F.2d 773, 790 (1st Cir. 1984), *aff'd*, 471 U.S. 359 (1985). The plaintiffs invoke the need to submit evidence concerning relevant post-hearing events,

3

asserting: "Although the hearing officer's January 2014 order required RSU 21 to create and implement a transition plan that should have been offered months earlier, the additional evidence makes clear that E.H. was required to finish the 2013-2014 school year at the Arlington School/Mill Street Lodge [the private program in Massachusetts] due to the pace at which the transition moved forward." Plaintiffs' Motion at 2-3. They argue that this evidence is relevant to their challenge to the hearing officer's decision to terminate their entitlement to reimbursement for the Arlington School and Mill Street Lodge "far in advance of there actually being a viable Maine educational placement into which she could appropriately transition." *Id*. at 6.

### III. Factual Background

E.H.'s parents ("Parents") filed a request for a due process hearing on June 11, 2013. Administrative Record ("Record") at 1. At a July 22, 2013, prehearing conference, the hearing officer framed the issues as (i) whether "the School's proposed IEP and placement offered to the Student between March and July 2013 fail[ed] to offer her a free appropriate public education ("FAPE")," and, (ii) if so, whether the Parents were "entitled to reimbursement of the costs they have incurred in connection with the Student's ongoing unilateral placement at the Arlington School/Mill Street Lodge in Massachusetts since May 2013" or another appropriate remedy, and whether E.H. was "entitled to a continuation of her current unilateral placement at public expense until the IEP team determines that she is ready to transition to an appropriate educational program in a less restrictive setting" or if another placement was appropriate. *Id*. at 89.

During an October 16, 2013, IEP team meeting, the District offered an amended IEP that included placement at the Sebago Educational Alliance ("SEA"), a day-treatment educational program in Maine with an intensive mental health component. *See* State of Maine Special Education Due Process Hearing [Decision] ("Hearing Decision"), *Family v. RSU 21,* Case No.

13.078H (Me. Dep't of Educ. Jan. 17, 2014), at 39, 41-43, ¶¶ 124, 128-33.[1] The due process hearing commenced on October 21, 2013, and spanned six days, ending on November 7, 2013. *See id*. at 1. The question of whether the October 2013 proposed IEP and placement offered a FAPE was added to the list of issues. *See id*. at 2.

In her decision, dated January 17, 2014, the hearing officer found that the IEPs dated March 13, 2013, and March 27, 2013, provided E.H. with a FAPE, *see id*. at 51-53, the annual IEP dated April 23, 2013, did not provide her with a FAPE, *see id*. at 53-56, and, with respect to the October 16, 2013, IEP:

> While the Parents are concerned that no one has been identified to provide DBT [dialectical behavioral therapy] support, it is the District's responsibility for determining who will provide the service. Therefore, the IEP does not become invalid merely because a provider has not been named. The crucial factor is that a qualified provider was slated to offer DBT services.
>
> The weakness of this IEP, as recognized by the District at the hearing, is the lack of a transition plan that will enable the Student to make a seamless transition from MSL [Mill Street Lodge] and Arlington [Arlington School] into the SEA program. While I find that this does not invalidate the IEP in total, in order to provide the Student a complete FAPE, the District must add a transition plan to it and work with the parents, Arlington and MSL administration, and the Student's providers as best it can to make such a transition happen as smoothly as possible.

*Id*. at 57-58 (citation omitted). In the "Order" portion of her decision, the hearing officer stated:

1. The proposed IEPs, dated March 13, 2013 and March 27, 2013, provided a FAPE to the Student.

2. The proposed IEP dated April 23, 2013 did not provide a FAPE to the Student.

3. The proposed IEP dated October 16, 2013 provided a FAPE to the Student.

4. The District must add a transition plan in the October 16, 2013 [IEP] and schedule a meeting with the IEP Team within 15 days from the date of this Order to plan the Student's transition from Arlington and MSL to SEA, along with any related services that must be provided pursuant to the IEP.

---

[1] For ease of reference, I shall refer to the consecutively numbered pages of the Hearing Decision rather than the Record pages where it is found, pages 2900 to 2964.

5. The Parents are entitled to reimbursement of the costs they have incurred in connection with the Student's unilateral placement at Arlington and Mill Street Lodge as follows:

   1. $26,326 in tuition reimbursement for Arlington, at $329.00 per day (from May 9 through June 24, from July 1 through July 26, 2013, and from September 5, 2013 through October 16, 2013).

   2. $27,645.00 in costs for MSL, at $485.00 per day (from May 13, 2013 through July 26, 2013, excluding 22 days ($10,670) deduction).

6. The Student is not entitled to a continuation of her current unilateral placement at either Arlington or MSL at public expense.

*Id*. at 65 (footnotes omitted).

At oral argument, the parties did not dispute that a transition plan was developed during a January 31, 2014, IEP team meeting. However, they disputed whether this was when the plan officially was added, with the plaintiffs' counsel noting that the Parents did not receive it until February 7 or 8, 2014.

Mr. H. and E.H. filed the instant appeal on April 9, 2014, arguing that the hearing officer "erred in limiting the amount of reimbursement awarded by using inappropriate cut-off dates for both the Arlington School expenses (October 16, 2013) and Mill Street Lodge (July 26, 2013), despite ruling that the District had not offered FAPE due to the absence of a transition plan from the October 2013 IEP offer." Complaint (ECF No. 1) at 22, ¶ 88.[2] They added:

> The District was unprepared to begin implementing the October 2013 IEP and/or E.H.'s proposed placement at Sebago as of October 16, 2013, and still remains unprepared to do so today. It did not create any transition plan until after receiving the hearing officer's decision, and still has failed to implement that transition plan or otherwise indicate its readiness to serve E.H. in accordance with the October 2013 IEP. For this reason as well, it was error for the hearing officer to terminate Plaintiffs' entitlement to reimbursement as of the artificial dates set forth in her order.

---

[2] E.H.'s mother is not a party to this appeal.

*Id.* ¶ 89.[3]

The District counterclaimed to vacate or reduce the reimbursement award on any of several bases, including that "any deficiencies in the . . . October 16th IEP, or in the development of a plan and schedule to transition E.H. back home from Arlington/MSL to SEA, are the result of conduct by the family and/or the private placement to obstruct and/or impede the IEP process[.]" Counterclaim, commencing on page 15 of Answer and Counterclaim (ECF No. 8), ¶ 53.

The plaintiffs seek to supplement the record with testimony of Mr. H. and 24 related exhibits bearing on "Defendant's lack of readiness to transition E.H. to an appropriate Maine placement, supported by continuation of DBT counseling, through the date of her completion of and discharge from the Arlington School/Mill Street Lodge program in Belmont, Massachusetts on June 18, 2014." Plaintiffs' Motion at 1-2.

It is undisputed that E.H. never transitioned to SEA for the 2013-14 school year. The District points out that, by letter dated August 20, 2014, Mr. H. informed it in writing that E.H. would not be attending SEA during the 2014-15 school year because he was enrolling her at the Waynflete School, *see* Defendant Regional School Unit No. 21's Reply to Plaintiff[s'] Partial Objection to Defendant's Motion to Supplement the Record (ECF No. 28) at 1, which the District characterizes as a private, non-special education, non-therapeutic day school in Portland, Maine, *see* Defendant's Suppl. Brief at 2. At oral argument, the plaintiffs' counsel confirmed that the family seeks no reimbursement for the period after June 18, 2014.

### IV. Discussion

The thrust of the District's objection to the introduction of supplemental evidence is that it bears on an issue never presented to, or considered by, the hearing officer: the District's asserted

---
[3] The plaintiffs also argue that the Hearing Officer erred by failing to address requests made for the reimbursement of transportation expenses and DBT therapy offered as a related service. Complaint ¶ 90.

failure to properly implement E.H.'s transition plan in a timely manner following the conclusion of the hearing. *See id*. at 3-4. The District contends that this allegation should have been the subject of a new due process hearing request rather than being raised for the first time on appeal, and that the plaintiffs accordingly failed to exhaust remedies, stripping the court of jurisdiction to act upon that subject matter and rendering the evidence irrelevant. *See id*. at 4-15.[4]

"Before filing suit, . . . IDEA mandates that plaintiffs exhaust administrative remedies through the due process hearing." *Rose v. Yeaw*, 214 F.3d 206, 210 (1st Cir. 2000). "The purpose of exhaustion is to enable the agency to develop a factual record, to apply its expertise to the problem, to exercise its discretion, and to correct its own mistakes, and is credited with promoting accuracy, efficiency, agency autonomy, and judicial economy." *Id*. (citation and internal punctuation omitted). Courts may exercise discretion to excuse the exhaustion requirement when "such exhaustion would be futile either as a legal or practical matter" or when "exhaustion will not only waste resources but also work severe harm upon a litigant." *Id*. (citations and internal quotation marks omitted). Those exceptions are not at issue here.[5]

In response to the District's argument, the plaintiffs clarify that:

---

[4] At oral argument and in their supplemental brief, the plaintiffs did not renew the argument that the District waived its threshold issue by failing to raise it until it filed its response to their motion to supplement. *See generally* Plaintiffs' Suppl. Opposition. To the extent that they still press the point, the objection is overruled. The District's argument potentially implicated the court's subject matter jurisdiction, warranting a fuller examination of its merits.

[5] I need not decide whether the failure to exhaust IDEA remedies strips the court of subject matter jurisdiction, a proposition for which the District cited caselaw from other jurisdictions, including *Hope v. Cortines*, 69 F.3d 687 (2d Cir. 1995). *See* Defendant's Suppl. Brief at 4-5. Although the plaintiffs have not contested that proposition, *see generally* Plaintiffs' Suppl. Opposition, my research discloses that courts are split over the issue, *see, e.g., D.C. ex rel. T.C. v. Mount Olive Twp. Bd. of Educ*., Civil No. 12-5592 (KSH), 2014 WL 1293534, at *21 n.9 (D.N.J. Mar. 31, 2014); *I.K. ex rel. B.K. v. School Dist.*, 961 F. Supp.2d 674, 687 n.7 (E.D. Pa. 2013), and that the First Circuit has not ruled on it. While this court, in a 1989 case, did describe a failure to exhaust IDEA remedies as leaving it without subject matter jurisdiction over the plaintiffs' complaint, *see Harper ex rel. Harper v. School Admin. Dist. No. 37*, 727 F. Supp. 688, 692 (D. Me. 1989), it has subsequently stated that a failure to exhaust IDEA remedies "*may* even be a subject matter jurisdiction issue[,]" noting the split in authority, *see Fitzpatrick v. Town of Falmouth*, 321 F. Supp.2d 119, 127 n.13 (D. Me. 2004) (emphasis added).

1. "They are not challenging as inappropriate, or seeking substantive review of, any of the IEP Team decisions made following the administrative hearing." Plaintiffs' Suppl. Opposition at 7. "Instead, they are presenting evidence concerning what those determinations were and when those determinations were made and implemented, for the purpose of allowing the Court to fix the proper cut-off date for the reimbursement order in this case." *Id*.

2. They do not argue that "'the failure to properly implement the appropriate transition plan amounted to a denial of FAPE entitling them to open-ended reimbursement.'" *Id*. at 9 (quoting Defendant's Suppl. Brief at 12). "Rather, Plaintiffs' position is far more simple: development and implementation of the necessary transition plan – the propriety of which they do not challenge – took time." *Id*. "The mere adoption and issuance of the plan to Plaintiffs in early February 2014 still did not mean that E.H. could begin being educated in Maine the following day." *Id*.

3. "They are not challenging the hearing officer's ruling that the October 2013 IEP was reasonably calculated to provide E.H. with meaningful benefit, if supplemented by a transition plan as ordered by the hearing officer." *Id*. at 10. "Rather, they are proposing additional evidence so the Court can determine when Defendant actually was in [a] position to implement that proposed IEP and transition E.H. to her new placement in Maine." *Id*. "This date – as opposed to July 26 or October 16, 2013 – would represent the appropriate date on which the Court should order termination of reimbursement." *Id*. at 10-11.

4. "To be clear, Plaintiffs are not asking the Court to review the appropriateness of the October 2013 IEP or the transition plan added to it in February 2014, following the hearing officer's order. . . . Contrary to Defendant's claim, Plaintiffs do not challenge 'the appropriateness of the transition plan, the District's efforts to implement the transition plan, the appropriateness of

the April 2014 IEP, or placement at [SEA] for the 2014-15 school year.'" *Id*. at 11 (quoting Defendant's Suppl. Brief at 14).

Nevertheless, as the District suggests, *see* Defendant's Suppl. Reply at 1-2, these clarifications, while aimed at deflecting the criticism that the plaintiffs failed to exhaust their remedies, do not overcome that hurdle and, ultimately, underscore the irrelevance of the bulk of the proffered evidence.

### 1. Exhaustion of Remedies

While the plaintiffs disclaim any challenge to the substance of post-hearing IEP decisions or the implementation of the transition plan, *see* Plaintiffs' Suppl. Opposition at 7, 9-10, it is difficult to see how the court could avoid examining those very matters. The plaintiffs emphasize that they intend to argue, as they did before the hearing officer, that reimbursement should continue until such time as the District was ready to implement the transition plan, and that all the court need do is fix that date. *See id*. Yet, it is not that simple. The District notes that it intends to argue that "any delay in development or implementation of the [transition] plan is attributable to E.H.'s parents and/or her service providers, who were hired by E.H.'s family[,]" and it is prepared to offer evidence to that effect. Defendant's Motion at 3. This is substantively a fresh dispute, based on post-hearing developments that have never been aired before a state hearing officer. Its resolution by this court would undercut the goal of "promoting accuracy, efficiency, agency autonomy, and judicial economy." *Rose*, 214 F.3d at 210 (citation and internal quotation marks omitted).

### 2. Relevance

In any event, evidence bearing on the parties' efforts to implement the transition plan is irrelevant. The issue presented to the hearing officer was whether the IEPs and placements offered by the District to E.H. between March and October 2013 failed to provide her with a FAPE. *See*

Hearing Decision at 2. The District persuasively argues that this case is materially indistinguishable from *Mr. Doe v. Cape Elizabeth Sch. Dep't*, No. 2:13-cv-407-JDL, 2014 WL 2968111 (D. Me. June 30, 2014), in which this court rejected parents' bid to supplement the record with post-hearing evidence of a school's alleged failure to implement an IEP on the basis that it was irrelevant to the subject matter of the appeal, which dealt with "the legal sufficiency of the IEP and the process leading up to it." Defendant's Suppl. Brief at 14; *Mr. Doe*, 2014 WL 2968111, at *2. In their response, the plaintiffs do not attempt to distinguish *Mr. Doe*. *See generally* Plaintiffs' Suppl. Opposition.

Even if, contrary to my finding above, evidence bearing on the parties' efforts to implement the transition plan could be said to be relevant to the subject matter of this appeal, the plaintiffs' clarifications of their position in their supplemental brief illuminate its irrelevance as a matter of law.

As the District observes, *see* Defendant's Suppl. Reply at 5, parents are entitled to reimbursement of the costs of a unilateral private placement only if a hearing officer finds that (i) the IEP proposed by the school district is inappropriate and (ii) the private placement is appropriate to meet the child's needs, *see, e.g., Mr. I v. Maine Sch. Admin. Dist. 55*, 416 F. Supp.2d 147, 169 (D. Me. 2006) ("The remedy of parental reimbursement for the cost of unilaterally placing a child with a disability in a private school is subject to important limitations. Reimbursement may be denied if the parent failed to give adequate notice to the school district before the unilateral placement. It may also be denied if the private placement itself is not appropriate for the child. Finally, it is available only if the school district has failed to provide the child with a free appropriate public education."); *see also Lauren G. ex. rel. Scott G. v. West Chester Area Sch. Dist.,* 906 F. Supp.2d 375, 390 (E.D. Pa. 2012) ("Parents are entitled to tuition reimbursement

11

under the IDEA for unilaterally changing their child's placement to a private school if the following three elements are proven: (1) the District failed to offer the student a FAPE; (2) the private placement is appropriate; and (3) equitable considerations favor reimbursement.").

Yet, the plaintiffs disclaim any challenge to the appropriateness of the October 2013 IEP, at least as of the point of time when it was supplemented by the post-hearing transition plan that the hearing officer ordered be developed. *See* Plaintiffs' Suppl. Opposition at 10. They cite no authority for the proposition that, despite the offer of a FAPE no later than the time the transition plan was added, reimbursement should have continued until such time as the District and SEA were prepared to change E.H.'s placement and educate her appropriately in Maine. *See id.* at 7.[6] They, therefore, fall short of providing the requisite "substantial justification" for the admission of much of their supplemental evidence.

That said, I conclude that both sides should be permitted to offer evidence for the limited purpose of demonstrating (i) the timing of the addition of a transition plan to the October 16, 2013, IEP and (ii) all costs for which Mr. H. claims reimbursement through that time. I do not find, as the District asserts, *see* Defendant's Suppl. Reply at 6 n.3, that the plaintiffs explicitly waived the

---

[6] As the District notes, *see* Defendant's Suppl. Reply at 2-3, the plaintiffs have not reiterated the argument made to the hearing officer that reimbursement should continue until such time as E.H. was actually ready to transition to SEA pursuant to the so-called "stay put" provision, 20 U.S.C. § 1415(j), *see* Record at 2833-37. The plaintiffs do cite 20 U.S.C. § 1415(i)(2)(C)(iii) for the proposition that the court has the broad statutory power to "grant such relief as [it] determines to be appropriate" based on the "preponderance of the evidence[.]" Plaintiffs' Suppl. Opposition at 6. However, this begs the question of how the court could find the requested relief appropriate subsequent to the offer of a FAPE. They also cite 20 U.S.C. § 1412(a)(1) for the proposition that every student with a disability is entitled to receive a FAPE at all times. *See id.* at 8. However, "[a] school system has met this obligation as long as the program that it offers to a disabled student is 'reasonably calculated' to deliver 'educational benefits.'" *C.G. ex rel. A.S. v. Five Town Cmty. Sch. Dist.*, 513 F.3d 279, 284 (1st Cir. 2008) (citation omitted). While a material failure to implement an IEP can, in itself, constitute a violation of the IDEA, *see, e.g., Aaron P. ex rel. Student K. v. Hawaii, Dep't of Educ.*, 897 F. Supp. 2d 1004, 1027 (D. Haw. 2012), the plaintiffs disclaim any such challenge, *see* Plaintiffs' Suppl. Opposition at 11, and, in any event, as discussed above, have not exhausted their administrative remedies with respect to such a claim.

argument that the October 2013 IEP was inappropriate. While the plaintiffs do state in their supplemental brief that they are "not asking the Court to review the appropriateness of the October 2013 IEP or the transition plan added to it in February 2014, following the hearing officer's order," Plaintiffs' Suppl. Opposition at 11, they elsewhere indicate that they construe the hearing officer's decision to have held that the October 2013 IEP would not provide a FAPE until the transition plan was added, *see id*. at 9 (arguing that the order to include a transition plan rested "on the IDEA's substantive requirement that the IEP set forth all of the services necessary to provide an appropriate education"), 10 (explaining that the plaintiffs do not challenge "the hearing officer's ruling that the October 2013 IEP was reasonably calculated to provide E.H. with meaning benefit, *if* supplemented by a transition plan as ordered by the hearing officer") (emphasis added). There is sufficient ambiguity to counsel against a finding of waiver, which "normally involves the intentional relinquishment of a known right." *United States v. Walker*, 665 F.3d 212, 227 (1st Cir. 2011).

If the plaintiffs prevail in their argument that the October 2013 IEP would not provide a FAPE until the transition plan was added, the court will require supplemental evidence bearing on the timing of the addition of the transition plan and the costs for which Mr. H. claims reimbursement through that time. That universe of evidence, which I deem admissible, is much smaller than that originally proffered. Accordingly, the parties are directed to meet and confer regarding that evidence and file within 21 days, or by March 19, 2015, either a stipulated record on the timing and costs issues, or if agreement is not possible, competing evidence.

## V. Conclusion

For the foregoing reasons, I ***DENY*** the District's request for further oral argument, ***GRANT*** the cross-motions in part, to the extent that the proffered evidence bears on the timing of the

13

addition of a transition plan to the October 16, 2013, IEP offered to the family and the costs for which Mr. H. seeks reimbursement through that date, and otherwise **_DENY_** them. The parties are **_DIRECTED_** to meet and confer regarding the extent to which they can agree on the evidence to be considered and file within 21 days, or by March 19, 2015, either a stipulated record on the timing and costs issues, or if agreement is not possible, competing evidence.

## *_NOTICE_*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to any further appeal of this order.*

Dated this 26th day of February, 2015.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge